1
2
3
4                       UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    ANDREA TIRELLI,                        Case No.  25-cv-04105-JSC

8                    Plaintiff,

9         v.                                **ORDER RE: MOTION TO DISMISS,**
                                            **FOR SUMMARY DENIAL OF**
10   UNITED STATES OF AMERICA,              **PETITION TO QUASH, AND FOR**
                                            **ENFORCEMENT OF THE IRS**
11                   Defendant.             **SUMMONS TO APPLE, INC.**

                                            Re: Dkt. No. 9
12

13          Petitioner sues the United States to quash an Internal Revenue Service ("IRS") summons to

14   Apple, Inc. ("Apple") for Petitioner's records.  (Dkt. No. 1.)  Now pending before the Court is the

15   United States' motion to dismiss, for summary denial of the petition to quash, and for enforcement

16   of the IRS summons to Apple.  (Dkt. No. 9.)  After careful consideration of the parties' briefing,

17   and having had the benefit of oral argument on August 28, 2025, the Court GRANTS the United

18   States' motion to deny the petition to quash and enforce the IRS summons.

19                                    **BACKGROUND**

20          The IRS received a request for exchange of information ("EOI Request") pursuant to the

21   Convention Between the United States of America and the Swiss Confederation for the Avoidance

22   of Double Taxation with Respect to Taxes on Income ("U.S.-Swiss Treaty").  (Dkt. No. 9-1 ¶¶ 3–

23   4.)[1]  Patricia Thomas, the IRS Program Manager of the Exchange of Information Office in the

24   Large Business and International Division ("LB&I"), reviewed the EOI Request.  (*Id.* ¶¶ 1–2.)

25   Program Manager Thomas testifies that, according to the EOI Request, IQ Global Consulting Sagl

26   in Liquidation ("IQ Global"), Estrea Property Ltd. ("Estrea"), Cristian Caruso, and Petitioner are

27   _____

28   [1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the
     ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

under civil examination and criminal investigation by Switzerland's Federal Tax Administration ("FTA") for tax evasion.  (*Id.* ¶¶ 5, 7.)  The FTA suspects IQ Global and Estrea manage a Swiss investment fund, Pendragon Fund Sicav-Sif S.C.A. ("Pendragon Fund"), without properly declaring and paying tax on its revenues in Switzerland, and that Petitioner, by failing to declare the income he has received from this arrangement, is implicated in their suspected tax evasion. (*Id.* ¶¶ 7–8.)  Program Manager Thomas testifies that Swiss "authorities obtained evidence that [Petitioner] used Apple's services to exchange messages and documents."  (*Id.* ¶ 9.)  According to Program Manager Thomas, the FTA requested Apple's records for Petitioner because such information "may help establish the authenticity of [] documents" in the FTA's possession and is "needed to conduct a transfer pricing analysis to determine how the revenues under investigation should have been accounted for properly."  (*Id.* ¶¶ 6, 10–11.)

Following her review, Program Manager Thomas determined the EOI Request was proper under the U.S.-Swiss Treaty.  (*Id.* ¶ 12.)  On March 27, 2025, Shelby D. Johnson, an IRS Tax Law Specialist in LB&I, issued an IRS summons to Apple requesting "subscriber and payment information sought in the EOI Request for account(s) related to" Petitioner and fixing April 25, 2025 as the date the IRS would examine Apple's records.  (Dkt. No. 9-2 ¶ 3; Dkt. 1-2 at 2.)  The summons seeks information including:

> 1. Subscriber or customer name;
> 2. Subscriber or customer address;
> 3. Local and long distance telephone connection records;
> 4. Records of session times and durations, including those of the internet;
> 5. Length of service (including start date) and types of service utilized;
> 6. Telephone or instrument number or other subscriber/customer number or identity, including any temporarily assigned network address, such as an Internet Protocol address; and
> 7. Means and source of payment for such service (including any credit card or bank account number).

(Dkt. No. 1-2 at 3.)

Also on March 27, 2025, Tax Law Specialist Johnson gave Petitioner notice of the summons via registered mail.  (Dkt. No. 9-2 ¶ 4; Dkt. No. 9-5.)  On April 21, 2025, the notice of summons arrived at Italy's official national postal service, Poste Italiane S.p.A.  (Dkt. No. 16 at 5;

1    Dkt. No. 1-3 at 2–3.)  Poste Italiane S.p.A recorded a first attempted delivery on April 28, 2025.

2    (Dkt. No. 16 at 5.)  On April 29, 2025, the notice was made available for pick up at Petitioner's

3    local post office, and Petitioner retrieved it the next day.  (*Id.*)

4        On May 12, 2025, Petitioner filed a petition to quash the IRS summons.  (Dkt. No. 1.)  The

5    United States moves for dismissal or summary denial of the petition and to enforce the summons.

6    (Dkt. No. 9.)

7                                    **DISCUSSION**

8        The U.S.-Swiss Treaty facilitates the exchange of information between the tax authorities

9    of the United States and Switzerland.  *See* Convention Between the United States of America and

10   the Swiss Confederation for the Avoidance of Double Taxation with Respect to Taxes on Income,

11   U.S.-Switz., Oct. 2, 1996, S. Treaty Doc. No. 105-8, as amended by the Protocol, Sept. 23, 2009,

12   S. Treaty Doc. No. 112-1.  Article 26 requires the United States to "use its information gathering

13   measures to obtain" information requested by Switzerland, even if the United States "may not

14   need such information for its own tax purposes."  *Id.* at art. 26(4).  Because the U.S.-Swiss Treaty

15   is "part of the law of the United States," the IRS is "bound by law to employ the same procedures

16   to obtain information requested by [Switzerland] pursuant to the Treaty as it would employ in the

17   investigation of a domestic tax liability."  *Lidas, Inc. v. United States*, 238 F.3d 1076, 1081 (9th

18   Cir. 2001).  One such procedure is the IRS's authority to examine records pursuant to a summons.

19   *See* 26 U.S.C. § 7602(a).

20   **I.    SUBJECT MATTER JURISDICTION**

21       "Section 7609(b)(2)(A) permits a taxpayer identified in an IRS summons served on a third

22   party recordkeeper to begin a proceeding to quash the summons; in turn, the government may seek

23   to compel compliance."  *Crystal v. United States*, 172 F.3d 1141, 1143 (9th Cir. 1999).  However,

24   a taxpayer must "begin a proceeding to quash summons not later than the 20th day after such

25   notice is given."  26 U.S.C. § 7609(b)(2)(A).

26       The United States argues this Court lacks jurisdiction because Section 7609(b)(2)(A) is a

27   jurisdictional provision, the IRS gave notice of the summons on March 27, 2025, and Petitioner

28   did not begin this proceeding until May 12, 2025, more than 20 days later.  (Dkt. No. 9 at 9–10.)

United States District Court
Northern District of California

1  Petitioner argues Section 7609(b)(2)(A) is instead a non-jurisdictional provision subject to

2  equitable tolling, which is warranted here.  (Dkt. No. 16 at 6–8.)

3  　　　　In *Ponsford v. United States*, 771 F.2d 1305 (9th Cir. 1985), the Ninth Circuit held that

4  Section 7609(b)(2)(A)'s 20-day filing requirement "is a condition precedent to the waiver of

5  sovereign immunity," so "a district court does not have jurisdiction" over petitions to quash filed

6  more than 20 days after a notice of summons.  *Id.* at 1309.  "Numerous courts, however, have held

7  that *Ponsford*'s holding was superseded by *Irwin v. Department of Veteran's Affairs*, 489 U.S. 89

8  (1990)."  *McIndoo v. United States*, No. SA MC 15-0019-JLS (DFMx), 2016 WL 1597107, at *2

9  (C.D. Cal. Jan. 12, 2016).  "*Irwin* [replaced] the then-prevailing rule, under which time limits set

10  by Congress for suits against the government were deemed jurisdictional and therefore not subject

11  to equitable tolling . . . with a rebuttable presumption that filing deadlines may be equitably

12  tolled."  *Volpicelli v. United States*, 777 F.3d 1042, 1044 (9th Cir. 2015) (internal citations

13  omitted).

14  　　　　Courts therefore disagree about whether Section 7609(b)(2)(A)'s time limit is a

15  jurisdictional waiver of sovereign immunity or a non-jurisdictional provision subject to equitable

16  tolling.  *See Strong v. United States*, 57 F. Supp. 2d 908, 915 (N.D. Cal. 1999) (noting

17  disagreement); *compare Baxter v. United States*, No. 15-cv-04764-YGR, 2016 WL 468034, at *4

18  (N.D. Cal. Feb. 8, 2016) ("The twenty-day limitations period is jurisdictional."), *with Zhang v.

19  United States*, No. 21-cv-04655-CRB, 2021 WL 6122922, at *3 (N.D. Cal. Oct. 28, 2021)

20  ("[E]quitable tolling applies, and [] the Court therefore has jurisdiction."), *aff'd*, No. 21-17093,

21  2022 WL 14010799 (9th Cir. Oct. 24, 2022).  But even if Section 7609(b)(2)(A) is non-

22  jurisdictional, equitable tolling "applie[s] sparingly" and on a "case-by-case" basis.  *Scholar v.

23  Pac. Bell*, 963 F.2d 264, 267 (9th Cir. 1992).  Courts refuse to apply equitable tolling "when a late

24  filing is due to claimant's failure to exercise due diligence in preserving his legal rights," but have

25  applied it when "the statute of limitations was not complied with because of defective pleadings,

26  when a claimant was tricked by an adversary into letting a deadline expire, and when the

27  [agency's] notice of the statutory period was clearly inadequate."  *Id.* at 268 (internal quotation

28  marks and citations omitted).

In any event, because the United States' motion can be resolved on the merits, the Court need not decide whether equitable tolling is available under Section 7609(b)(2)(A) or should be applied to this petition.

## II.    IRS'S MOTION FOR SUMMARY DENIAL OF PETITION AND FOR ENFORCEMENT OF THE SUMMONS

To defeat a petition to quash and compel compliance, the IRS must establish "good faith" by showing the summons: (1) is issued for a legitimate purpose; (2) seeks information that may be relevant to that purpose; (3) seeks information not already in the IRS's possession; and (4) satisfies all of the administrative steps set forth in the Internal Revenue Code. *United States v. Powell*, 379 U.S. 48, 57–58 (1964). "Courts have consistently recognized that declarations or affidavits by IRS directors or agents generally satisfy the *Powell* requirements." *Lidas, Inc.*, 238 F.3d at 1082. "The [government's] burden is minimal because the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted." *Crystal*, 172 F.3d at 1144 (internal quotation marks and citation omitted). Indeed, "[e]nforcement of a summons is generally a summary proceeding to which a taxpayer has few defenses." *Id.* (internal quotation marks and citation omitted).

Once the government has established the *Powell* elements, the petitioner bears a heavy burden to show the IRS's bad faith or the summons's improper purpose. *Id.* To meet that burden, the petitioner "must allege specific facts and evidence to support his allegations of bad faith or improper purpose." *Id.* (internal quotation marks and citation omitted).

"The same test applies where the IRS issues a summons at the request of a tax treaty partner." *Lidas, Inc.*, 238 F.3d at 1082 (citing *United States v. Stuart*, 489 U.S. 353 (1989)). "In such case, the IRS need not establish the good faith of the requesting nation." *Id.* Instead, "[s]o long as the IRS itself acts in good faith [under *Powell*] . . . and complies with applicable statutes, it is entitled to enforcement of its summons." *Id.* (quoting *Stuart*, 489 U.S. at 370).

### A.    The IRS Has Met Its Prima Facie Burden

First, the IRS issued the summons for the legitimate purpose of meeting the United States' treaty obligations to the Swiss government. Program Manager Thomas determined the EOI

1    Request is proper under the U.S.-Swiss Treaty. (Dkt. No. 9-1 ¶ 12.) "Complying with a treaty

2    partner's proper request is a legitimate purpose." *Zhang*, 2021 WL 6122922, at *3; *see also*

3    *Maxcrest Ltd. v. United States*, 205 F. Supp. 3d 1099, 1103 (N.D. Cal. 2016) (finding "purpose of

4    meeting the treaty obligations" legitimate), *aff'd*, 703 Fed. App'x 536 (9th Cir. 2017).

5        Second, the summons seeks the information in Switzerland's EOI Request, which may be

6    relevant to determine Petitioner's compliance with Swiss tax laws. Program Manager Thomas

7    attests to a "reasonable basis to believe that the requested information, if produced, may contain

8    information relevant to the FTA's determination of the correct Swiss income tax and potential

9    criminal tax liabilities of [Petitioner]." (Dkt. No. 9-1 ¶ 13.)

10       Third, Program Manager Thomas and Tax Law Specialist Johnson testify the IRS did not

11   possess the sought-after records when it issued the summons. (*Id.* ¶ 17; Dkt. No. 9-2 ¶ 7.)

12       Fourth, Tax Law Specialist Johnson attests the IRS provided Petitioner notice of the

13   summons and took all administrative steps required by the Internal Revenue Code. (Dkt. No. 9-2

14   ¶¶ 3–4, 8.)

15       The IRS has therefore satisfied all four *Powell* elements and established its good faith in

16   issuing the summons.

17       **B.    Petitioner Fails to Allege Facts and Evidence to Show the IRS's Bad Faith or
             Improper Purpose**

18

19       As the IRS has met its prima facie burden, Petitioner bears the heavy burden of

20   demonstrating the summons was issued in bad faith or with an improper purpose.

21       Petitioner contends the summons was issued in bad faith because the "Summons was

22   issued for the improper purpose of aiding the Swiss government in a Criminal Investigation."

23   (Dkt. No. 16 at 9.) Petitioner relies on 26 U.S.C. § 7602(d) and the U.S. Department of Justice

24   Summons Enforcement Manual, which prohibit the IRS from issuing a third-party summons when

25   the IRS has referred the case to the Justice Department for prosecution. (*Id.* at 10.) According to

26   Petitioner, because the summons would be unenforceable if the IRS had referred an investigation

27   into Petitioner to the U.S. Justice Department for a criminal investigation, the existence of a Swiss

28   criminal investigation demonstrates the IRS's bad faith in issuing this summons. But "Congress

United States District Court
Northern District of California

1    did not intend to make the enforcement of a treaty summons contingent upon the foreign tax

2    investigation's not having reached a stage analogous to a Justice Department referral." *Stuart*, 489

3    U.S. at 363.  Instead, the "only restriction" imposed by Section 7602(d) is the statutory restriction:

4    "[T]he IRS may neither issue nor move to enforce a summons if the IRS has referred the

5    summonee's case to the Justice Department." *United States v. Abrahams*, 905 F.2d 1276, 1281

6    n.4 (9th Cir. 1990), *rev'd on other grounds*, *United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997).

7    So, a Swiss criminal investigation does not demonstrate the IRS's bad faith.

8        Petitioner also argues the requested information is not relevant to a legitimate purpose, is

9    "overly broad," and "appears to be part of an impermissible fishing expedition" because "the IRS

10   has failed to show how the information bears any relation to the taxation laws of either the United

11   States or Switzerland."  (Dkt. No. 16 at 11.)  The Court disagrees.  An IRS summons "allow[s] the

12   IRS to obtain items of even *potential* relevance to an ongoing investigation," as long as those

13   items might "throw light upon the correctness of" a petitioner's tax return.  *United States v. Arthur*

14   *Young & Co.*, 465 U.S. 805, 814–15 (1984) (internal quotation marks and citation omitted).

15   Program Manager Thomas's declaration explains why the requested subscriber records may be

16   relevant to the Swiss government's tax investigation, including because the information requested

17   from Apple "may help establish the authenticity of the documents" in the FTA's possession,

18   which could "support offenses connected with the administration or enforcement of the Swiss

19   taxes covered by the U.S.-Swiss Treaty," and is needed for the FTA to "conduct a transfer pricing

20   analysis to determine how the revenues under investigation should have been accounted for

21   properly."  (Dkt. No. 9-1 ¶¶ 10–11.)  *See Maxcrest Ltd. v. United States*, 205 F. Supp. 3d at 1103

22   (concluding IRS summons for similar information, including "subscriber's name and address, the

23   length of service utilized, telephone number or other identifying information, and the Internet

24   Protocol address," was not overly broad and was potentially relevant to foreign country's tax

25   investigation).

26       Petitioner initially argued the IRS failed to satisfy necessary administrative steps because it

27   did not "provide [him] timely notice of the summons."  (Dkt. No. 1 ¶ 12.)  "[N]otice of the

28   summons shall be given to any person so identified within 3 days of the day on which such service

1   is made, but no later than the 23rd day before the day fixed in the summons as the day upon which

2   such records are to be examined." 26 U.S.C. § 7609(a)(1). Notice is "'given' on the date it is

3   mailed." *Stringer v. United States*, 776 F.2d 274, 276 (11th Cir. 1985); *see also Maxcrest Ltd.*,

4   205 F. Supp. 3d at 1104 (considering notice given upon postmarked mail). Although Petitioner

5   "did not receive the notice of summons until April 30, 2025," Petitioner now acknowledges the

6   IRS sent notice of the summons via registered mail on March 27, 2025. (Dkt. No. 16 at 5, 7.)

7   Because the IRS sent Petitioner notice of the summons on the same day it served the summons and

8   29 days before the date fixed for examination of the records, the IRS provided timely notice. (Dkt.

9   No. 9 at 14.)

10          Petitioner also contends that because he is an Italian citizen and European Union ("EU")

11   resident, Apple's disclosure would violate his rights under the EU's General Data Protection

12   Regulation ("GDPR"). (Dkt. No. 1 at 8; Dkt. No. 1-5.) Petitioner argues his contracts with Apple

13   require Apple "to ensure that any processing and transfer of personal data complies with" the

14   GDPR, and cites GDPR Article 48, which "provides that decisions from [non-EU] authorities

15   requiring the disclosure of personal data may only be recognized or enforceable where they are

16   based on an international agreement in force between the requesting [non-EU] country and the

17   [EU] or a Member State." (Dkt. No. 1-5 at 2; Dkt. No. 16 at 12.) According to Petitioner, because

18   Switzerland is not a member of the EU, the IRS summons, issued pursuant to the U.S.-Swiss

19   Treaty, "cannot constitute a valid legal basis" to compel Apple to disclose Petitioner's data. (Dkt.

20   No. 16 at 12.) However, because "[t]he party relying on foreign law has the burden of showing

21   that such law bars production," *United States v. Vetco, Inc.*, 691 F.2d 1281, 1289 (9th Cir. 1981),

22   Petitioner must show not only that the U.S.-Swiss Treaty is not a valid legal basis to compel

23   Apple's production, but also that the GDPR prohibits Apple's production. He has not done so;

24   instead, as the government notes, Petitioner assumes the GDPR prohibition is a "foregone

25   conclusion." (Dkt. No. 17 at 8.) And, even if Petitioner had done so, Petitioner does not explain

26   how a GDPR prohibition could demonstrate the IRS's bad faith in issuing the summons.

27          So, Petitioner has not alleged facts or evidence to show the IRS's bad faith or improper

28   purpose.

C.    **Evidentiary Hearing and Discovery**

Petitioner also "requests an evidentiary hearing and limited discovery to evaluate the constitutionality of the Summons under *Powell*, Article 26 of the Convention, and the EU GDPR." (Dkt. No. 1 ¶ 23.)  A taxpayer seeking to quash an IRS summons "is entitled to examine an IRS agent when he can point to specific facts or circumstances plausibly raising an inference of bad faith.  Naked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge."  *United States v. Clarke,* 573 U.S. 248, 254 (2014).  Following an evidentiary hearing, discovery may be warranted "if the trial court is not convinced that the summonses were issued for a proper purpose."  *United States v. Stuckey*, 646 F.2d 1369, 1374 (9th Cir. 1981).  But "discovery in a summary summons enforcement proceeding is the exception rather than the rule."  *United States v. Church of Scientology of California*, 520 F.2d 818, 824 (9th Cir. 1975).

Petitioner does not allege facts and circumstances to warrant an evidentiary hearing or limited discovery.  Petitioner doubts Switzerland's EOI Request accurately described the Pendragon Fund's incorporation and registration and the status of Swiss criminal court proceedings, and argues the potential inaccuracies suggest "Switzerland is attempting to abuse this Court's power."  (Dkt. No. 16 at 4, 8–9.)  However, "the IRS need not establish the good faith of the requesting nation."  *Lidas, Inc.*, 238 F.3d at 1082.  In fact, for a court to "look beyond a facially proper request to determine the true motivations of the requesting foreign government . . . would run counter to what the Supreme Court said in *Stuart*."  *Puri v. United States*, No. 21-55132, 2022 WL 3585664, at *1 (9th Cir. Aug. 22, 2022).  In the absence of evidence suggesting the IRS itself acted in bad faith, Petitioner is not entitled to an evidentiary hearing or discovery.

So, the Court denies Petitioner's request for an evidentiary hearing and discovery.

## CONCLUSION

For the reasons explained above, the Court GRANTS the United States' motion and orders enforcement of the IRS summons.

This order disposes of Docket No. 9.

**IT IS SO ORDERED.**

United States District Court
Northern District of California

9

Dated: August 28, 2025

_____
JACQUELINE SCOTT CORLEY
United States District Judge

United States District Court
Northern District of California

10